**INDEPENDENT INDUSTRIAL WORK-
ERS' UNION**

v.

**HUMBLE OIL & REFINING COMPANY.**

**Civ. A. No. 2701.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

July 30, 1963.

George W. Liskow, Lake Charles, La., for plaintiff.

Wilson B. Holcombe and John M. Carville, Baton Rouge, La., for defendant.

WEST, District Judge.

Complainant, Independent Industrial Workers' Union, hereinafter referred to as the "Union", seeks to enforce the arbitration provisions of a collective bargaining agreement between it and respondent, Humble Oil & Refining Company, hereinafter referred to as the "Company". The Union also seeks damages in the sum of $8,800 for the alleged failure of the Company to perform its obligations under the arbitration provisions of the agreement. The case was submitted to the Court on an agreed stipulation of fact, and in accordance therewith, the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### 1.

The Union is an independent labor organization duly certified to, and in fact, representing the employees at the Baton Rouge Refinery of Humble Oil & Refining Company at Baton Rouge, Louisiana.

### 2.

The Company is a corporation domiciled in Wilmington, Delaware, authorized to do and doing business in the State of Louisiana.

### 3.

The sole question at issue is whether or not, in this particular case, the Company can be compelled to arbitrate on the particular grievance, herein involved, filed by the Union.

### 4.

The Company and the Union entered into a collective bargaining agreement which was to be effective for a period of two years commencing March 9, 1962.

### 5.

At some time between March 9, 1962 and July 2, 1962, while the collective bargaining agreement was in full force and effect, the Company commenced an investigation concerning a possible misdeed of an employee member of the Union. During the course of the investigation, the Company called the employee involved in for interrogation, and the Union immediately requested the right to be present, through their authorized representative, on the grounds that the investigation might result in disciplinary action being taken against the employee, and that in such event, the Union, under the terms of the collective bargaining agreement, would have the right to represent the employee.

### 6.

The Company refused the Union's request to be present at the interview, to which refusal the Union immediately took exception as a violation of the terms of the collective bargaining agreement.

### 7.

On August 10, 1962, the Union gave written notice to the Company that it, the Union, desired to arbitrate this grievance. On August 24, 1962, the Company notified the Union by letter that it declined the request to arbitrate. As their reasons for refusing to arbitrate, the Company now states that under the agreement, they are compelled to arbitrate only "grievances filed in good faith"; that the investigation complained of was made only to gather facts in order to decide whether or not to impose disciplinary measures on the employee; that this was merely a "pre-grievance" interview, and that under the collective bargaining agreement, a grievance does not come into existence until the Company has actually taken a firm position

as to what disciplinary action, if any, to impose upon the employee. It is, therefore, the Company's position that the Union has simply not presented an arbitrable grievance.

### 8.

The Union, on the other hand, takes the position that the refusal of the Company to allow the Union representative to be present at this interview was a violation of Section 211 of the collective bargaining agreement, which reads as follows:

"211. *Recognition of Union Functions*

"The Company recognizes the Union as the exclusive representative of all employees covered by this agreement for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment."

### 9.

The Union then contends that under Section 231 of the agreement, which reads:

"231. *Grievance Defined*

"A grievance is the situation which exists when an employee, a group of employees, or the Union feels injured, treated unfairly, or aggrieved because of the position taken by the Company (or the Company feels aggrieved because of the position taken by the Union) in regard to a matter concerning wages, hours, or working conditions."

they have a grievance which is arbitrable under Section 251, which states:

"251. *What Grievances Are Arbitrable*

"An arbitrable grievance is a good faith claim by one party that the other party has violated a written provision of this agreement. If the claim is disputed, the issue is either:

"(1) The interpretation of the provision, or

"(2) The facts, or both."

### 10.

The Union now seeks arbitration of this grievance in accordance with the provisions of Sections 253 through 257 of the collective bargaining agreement, which provides specifically for the mechanics of arbitration procedure.

### 11.

The Union also seeks the sum of $8,800 as alleged damages incurred as a result of the Company's refusal to arbitrate this matter.

## CONCLUSIONS OF LAW

### 1.

Jurisdiction is vested in this Court under the provisions of Section 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a).

### 2.

A request for an order to compel arbitration of a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. This is especially true where the arbitration clause is broad, and there is a lack of forceful evidence of an intent to exclude claims of the type involved from arbitration. United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

### 3.

If a contract provides for arbitration of disputes as to the meaning or application of the various terms of the agreement, and either side files a grievance alleging that such a dispute exists, then, in the absence of a clear showing of either bad faith, or that the terms of the agreement are clearly and positively

susceptible of only one meaning, the Court's function becomes, in essence, a ministerial one of ordering arbitration. International Chemical Workers Union, Local No. 19, AFL-CIO v. Jefferson Lake Sulphur Company, D.C., 197 F.Supp. 155.

### 4.

The policy enunciated in the Labor Management Relations Act relative to industrial stability can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play. The question is not whether the Court, in its opinion, thinks the claim of either party is meritorious, but rather whether or not the party seeking arbitration is making a claim which, on its face, is governed by the arbitration provisions of the agreement. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator, and, in accordance with the provisions of the agreement, the moving party should not be deprived of the arbitrator's judgment. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is a particular language in the written instrument which will support the claim." United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403.

### 5.

The collective bargaining agreement in this case provides that "An arbitrable grievance is a good faith claim by one party that the other party has violated a written provision of this agreement." The Union claims that the Company has violated specific sections of the agreement, i. e., "Sections 211, 234, and other provisions of the contract." The Company takes the position that it has not violated these sections nor any other provisions of the agreement. There is no showing whatever of bad faith on the part of the Union. The language of Sections 211 and 231 particularly of the collective bargaining agreement, especially where they refer to "other conditions of employment" and "working conditions" is sufficiently broad to be susceptible of varying interpretations. There is, therefore, a good faith claim by one party, the Union, that the other party, the Company, has violated a written provision of the agreement. Therefore, under the clear provisions of the agreement, arbitration should be ordered, and such arbitration should be held in accordance with Sections 250 through 257 of the collective bargaining agreement pertaining specifically to arbitration procedure.

### 6.

There being no evidence whatsoever to show that the Union has, in fact, been damaged in any way by the Company's refusal to arbitrate in this matter, the Union's demand for damages is therefore to be denied.

### 7.

Judgment will be entered accordingly.